FILED
9/15/16 3:28 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| GURU GLOBAL LOGISTIC, LLC, | : | Case No. 15-10096-TPA |
| *Debtor* | : | |
| | : | Chapter 7 |
| LANCER INSURANCE COMPANY, | : | |
| *Movant* | : | Related to Doc. Nos. 143, 145 |
| | : | |
| v. | : | |
| GURU GLOBAL LOGISTIC, LLC, and | : | |
| TAMERA OCHS ROTHSCHILD, ESQ.,: | | |
| Chapter 7 Trustee, | : | |
| *Respondents* | : | |

## <u>MEMORANDUM ORDER</u>

Presently before the Court are two motions filed by Lancer Insurance Company ("Lancer"), a ***Motion for Order Directing the Trustee to Abandon, or in the Alternative Proceed with, Pre-Petition Appeal*** ("Appeal Motion"), Doc. No. 143, and ***Motion for Relief from Automatic Stay*** (Stay Motion"), Doc. No. 145, (collectively, "the Motions").  The *Motions* were the subject of an argument held on August 8, 2016, following which the Court issued an order giving the  Parties until August 22, 2016 to request an evidentiary hearing if they believed one was necessary, and indicating that the *Motions* would be decided without further hearing if no such request was made.  The deadline has passed and none of the Parties asked for a hearing, so the *Motions* are ripe for decision.  For reasons explained further below, both of the *Motions* will be denied.

1

*Appeal Motion*

The "Appeal" in the *Appeal Motion* is the one that Debtor Guru Global Logistic, LLC ("Guru") took from the large judgment obtained against it by Vickie and Mark McConnell in the Court of Common Pleas of Lawrence County, Pa. in August 2014 arising out of a fatal motor vehicle accident.[1]   That Appeal, which was docketed in the Pennsylvania Superior Court at No. 1583 WDA 2014, has been stayed since the filing of Guru's bankruptcy petition on January 28, 2015.[2]   As indicated by its title, the *Appeal Motion* asks for relief in the alternative.  Lancer's first preference is that the Trustee be ordered to abandon the Appeal to Guru.  In the alternative, Lancer asks that the Trustee be ordered to move forward with the Appeal.

This is not the first time the subject of the Appeal has come before this Court, and consideration of what previously transpired is necessary in deciding the current *Appeal Motion*. Early on in the bankruptcy the Trustee filed a *Motion by Trustee for Leave to Dismiss Pre-Petition Appeal with Prejudice* ("Trustee's Motion to Dismiss"), Doc. No. 36, in which she alleged that she did not believe the continued prosecution of the Appeal would be in the best interests of the

---

[1]   A jury verdict against Guru in the amount of $5,465,000 was rendered on December 19, 2013.  Apparently Guru unsuccessfully pursued post-trial motions thereafter, which explains the delay before the entry of judgment. With post-judgment interest and delay damages the McConnells have indicated they believe the claim to be now worth over $6 Million.  *See,* Claim No 2-1.

[2]   A search of the Appeal docket on the web site of the Pennsylvania Superior Court (https://ujsportal.pacourts.us/DocketSheets/Appellate.aspx) reveals that the notice of appeal was docketed on September 30, 2014, the Appellant's brief was filed on December 23, 2014, and the Appellees' briefs were filed on January 21, 2015.  A notice of the bankruptcy filing was entered on the Superior Court docket on February 6, 2015, and the Appeal was formally stayed on February 11, 2015.

2

bankruptcy Estate or the creditors.  The Trustee also alleged that she had considered the possibility

of abandoning the Appeal to Guru  and Lancer, but concluded that a dismissal would be preferable

because if the Appeal were abandoned, and thus left in the hands of Lancer and Guru to pursue, it

could have a negative effect on the bad faith claim against Lancer that is the largest asset of the

Estate.  The Trustee speculated that, for instance, if the judgment were overturned on appeal and the

matter remanded for a new trial, Lancer could then provide a complete defense for Guru, thus

insulating itself from the bad faith claim, while a large verdict might  still be entered against Guru,

thereby leading to a "worst of both worlds" scenario for the Estate.

Lancer and Guru both filed responses opposing the *Trustee's Motion to Dismiss*,

see Doc. Nos. 45, 46.  A status conference regarding  the *Trustee's Motion to Dismiss* was held on

April 20, 2015, and the Parties sharply disputed whether the Trustee should be granted the relief she

was seeking.  The Court took the matter under advisement.  On May 7, 2015, the Trustee filed a

"Response" in further support of her motion.  Doc. No. 63.  On June 10, 2015, the Court issued an

order scheduling an evidentiary hearing for June 30th on the issue raised by Lancer as to  whether

the Trustee's proposed special counsel,  Jeffrey Killino ("Killino"),  would have a conflict of

interest, an issue the Court found had to be decided before it could rule on the *Trustee's Motion to

Dismiss*.  Subsequently, an issue arose as to whether Lancer would have standing to oppose the

*Trustee's Motion to Dismiss*  if its claim (which was and is the subject of an objection by the

McConnells and the Trustee) were to be dismissed.  The Court ordered briefing on that issue and

provided it would also be part of the June 30th hearing.

It was in that context, with an impending evidentiary hearing, that Lancer and the

3

Trustee filed a *Stipulation* on June 29, 2015, at Doc. No. 89.  That *Stipulation* provided for Lancer's

withdrawal of all of its objections to the employment of Killino as special counsel for the Trustee,

and also provided:

> 3.    The Motion to Dismiss [the Appeal] is hereby amended to
> provide that the Trustee shall agree to stay the Appeal until further
> application by the Trustee at a later time.
>
> 4.    The objection by Lancer to the Motion to Dismiss, as amended
> hereby, is hereby withdrawn.  Any rights and any objections which
> Lancer may have in connection with the Motion to Dismiss (or a
> subsequent motion to dismiss the Appeal) are expressly reserved.

As a result of the *Stipulation*, the scheduled evidentiary hearing did not occur and was instead

converted essentially into a status conference.  The Court approved the *Stipulation* on July 1, 2015.

*See*, Doc. No. 95.  Nothing further was heard about the Appeal until the *Appeal Motion* was filed

by Lancer on May 3, 2016.

Turning then to the *Appeal Motion* itself, as to Lancer's preferred remedy of

abandonment, the Bankruptcy Code  provides that:

> b)  On request of a party in interest and after notice and a hearing, the
> court may order the trustee to abandon any property of the estate that
> is burdensome to the estate or that is of inconsequential value and
> benefit to the estate.

*11 U.S.C.A. § 554(b)*.  A party seeking to compel abandonment pursuant to  *Section 554(b)* has the

burden of proving by a preponderance of the evidence that the property at issue is burdensome to

the estate or of inconsequential value or benefit to the estate.  *In re Winsted Memorial Hospital*, 249

B.R. 588, 595   (Bankr. D. Conn. 2000) (citing *In re Paolella*, 79 B.R. 607 (Bankr. E.D. Pa. 1987)).

Additionally, while there is relatively little case law under *Section 554(b)* itself,   drawing by analogy from trustee-initiated abandonments under *Section 554(a)*, the Court in deciding a motion brought pursuant to *Section 554(b)* will defer to a trustee's decision not to abandon property provided it finds that the trustee made a business judgment, in good faith, upon some reasonable basis, and within the scope of her authority.  *In re Stack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003).

It is thus readily apparent that Lancer faces a demanding standard if it is to obtain an order directing an abandonment of the Appeal over the objection of the Trustee.  Lancer has failed to meet that standard.  In the first instance, Lancer has not shown that the Appeal is in any way burdensome to the Estate, particularly in its current "stayed" status.  The Appeal is an intangible property right that requires no dedication of time, resources or effort by the Trustee to maintain it in existence.  It does not need to be stored, or guarded, or insured.  In short, the Appeal imposes no burden on the Estate.

Lancer has also failed to meet its alternative burden of proving that the Appeal is of inconsequential value or benefit to the Estate.  In evaluating this issue, the Court begins with the understanding that the nature of the Appeal when viewed strictly as an item of property is such that any estimation of its value or benefit to the Estate is bound to be speculative since there are so many variables and contingencies involved.  What is the chance the judgment against Guru would be overturned by the Appeal?  If the judgment is overturned, what is the likelihood the case would be remanded for a new trial?  If the case is remanded for a new trial, what is the likelihood of another verdict against Guru, and in what amount?  What would the effect be on the bad faith claim against Lancer?  None of those questions, and many others that could be raised, can be answered in advance

with any sort of assurance, thus making for a wide scope of possible opinion as to the value or benefit of the Appeal.

The uncertainty concerning the Appeal would thus seem to bear out the wisdom of deferring to the reasonable business judgment of the Trustee.  Lancer nevertheless attempts to advance several reasons why the Court should find that the Appeal lacks value or benefit despite the Trustee's business judgment, but none are persuasive.

Lancer first says that since the time the *Stipulation* was approved  the Trustee has initiated a new multiple-count case in Lawrence County against Lancer ("the Trustee Action"),[3] which includes a claim of bad faith that is based solely on Lancer's failure to make a settlement offer before the large final judgment was entered against Guru.  Lancer argues that this means the Trustee has changed her theory on the bad faith claim.  According to Lancer, whereas previously in pursuing the *Trustee's Motion to Dismiss with Prejudice* the Trustee had asserted that Lancer's bad faith consisted of failing to provide a proper defense to Guru, with the filing of the Trustee Action she has now shifted to an assertion that the bad faith was limited to a failure to make a settlement offer. Lancer argues that this shift in theory means that an alleged failure to provide a defense for Guru is no longer at issue, hence there should be no reason for the Trustee to fear that Lancer could provide a defense in a trial on remand and thus "sanitize" its prior bad faith, and to allay that fear by wanting to keep control of the Appeal rather than abandoning it.

---

[3]    The Trustee Action is identified as *Rothschild, et al. v. Lancer Insurance Company*, Lawrence County Court of Common Pleas, Case No. 10685-15 filed on or about July 10, 2015.

6

Lancer's argument might have some merit if the Trustee Action were in fact strictly limited to an allegation that Lancer's bad faith consisted solely of a failure to make a settlement offer. The Trustee argues, however, that the allegations of bad faith made in the Trustee Action are broader than that, and after reviewing the complaint filed in the case the Court agrees.

While allegations of a failure to make a settlement offer are prominent, the Trustee Action complaint also contains allegations such as that Lancer provided only a "gratuitous defense" to Guru, that it "haphazardly proceeded" to trial knowing that it would have a second bite at escaping liability through subsequent declaratory judgment coverage litigation, that by voluntarily undertaking Guru's defense and taking control of the decision to settle or litigate it assumed a position of trust and confidence calling for an exercise of utmost good faith, and that Lancer knew there was no reasonable basis for a favorable verdict. These sorts of allegations leave open the possibility that bad faith might be found for a number of reasons, some of which could potentially be affected by Lancer's conduct in a trial on remand ordered in the Appeal. In other words, the Trustee still has a basis for concern about how the outcome of the Appeal might impact the bad faith claim.

Lancer also argues that by allowing the Appeal to remain stayed the Trustee is breaching the duty of an insured to cooperate, which Lancer is confident will result in a bar of the bad faith claim. Lancer also asserts that there is unfairness and possible conflict of interest in the Trustee Action in that the Trustee is seeking access to the records of the law firm that is representing Guru in the Appeal, which could compromise the Appeal. Lancer concedes that it has raised both of these issues in the Trustee Action, but says that they warrant "renewed consideration" by this

7

Court as well with respect to the Trustee's ongoing decision to retain the Appeal and keep it stayed.

Neither of these issues appears to go directly to the value or benefit of the Appeal to the Estate,

which is the focus of the inquiry under *Section 544(b)*. Furthermore, to the extent they may be said

to indirectly implicate value or benefit, the Court is satisfied that the Trustee has factored them in

to her decision and still concluded that maintaining the Appeal as property of the estate, and

maintaining the stay in place, are of value or benefit to the Estate, and it is not this Court's role to

second guess that decision, at least where it is not obviously unreasonable. The Court's conclusion

is also bolstered by the fact that Lancer, by its own admission, can and has raised these very issues

in the Trustee Action where they can be addressed by the Lawrence County court. Lancer's due

process rights are thus not being impinged by a refusal to require abandonment of the Appeal.

As its final argument in support of abandonment, Lancer says that the only parties

that stand to benefit from a continued stay of the Appeal are the McConnells and the Trustee

because, if the Appeal goes forward and the judgment against Guru is reversed, that would eliminate

the McConnells claim, to the benefit of the other creditors. According to Lancer, by refusing to

proceed with the Appeal the Trustee is thereby favoring the McConnells over these other creditors

of the bankruptcy Estate. The problem with this argument is that, aside from the claim of Lancer

itself,[4] which is at best only a contingent creditor whose claim is dependent on the outcome of the

---

[4]    As was indicated above, the Court also notes that a timely objection to the Lancer proof of claim has been filed and briefed and remains to be decided. *See*, Doc. No. 56.

8

MCS-90 endorsement dispute,[5] there are no other creditors in this case.  *See,* Claims Register.  In other words, as of right now, with the claims bar date well past,  the McConnells are the only non-contingent creditors of the Estate.

Lancer has therefore failed to meet its burden of proof to convince the Court that the Trustee should be ordered to abandon the Appeal against her will.  In the alternative, Lancer asks that  the Trustee be directed to proceed with the Appeal.  Lancer argues that such an order would benefit the Estate because a successful appeal could potentially result not just in a remand for a new trial, but in a judgment notwithstanding the verdict ("JNOV") by the Superior Court, which would at one stroke eliminate the McConnells as creditors in the bankruptcy, thus benefitting other creditors.  As was just discussed, however, there are no other creditors in the case.  And, while a JNOV is certainly a possibility in the Appeal, the Court has been provided with no evidence to show how likely a possibility it is under the facts and circumstances of the case.  In the absence of such evidence, the Court can only presume that the Trustee has factored into her decision the possibility of a JNOV and concluded that it is not sufficient to change her decision to continue with a stay of the appeal.  The Court cannot find that to be an unreasonable decision.

---

[5]        As the Court understands it, the liability policy which Lancer issued to Guru included a so-called "MCS-90 Endorsement."  This is a special type of endorsement that is required by federal law to be issued in conjunction with liability policies for interstate motor carriers.  *See, Motor Carrier Regulatory Reform and Modernization Act of 1980*, Pub.L. No. 96-296 (1980), and 49 C.F.R. §§ 387.7(a), 387.9, and 387.15.  The primary purpose of the MCS-90 endorsement is to assure that injured members of the public are able to obtain judgment from negligent interstate carriers.  The endorsement creates a suretyship by the insurer to protect the public when the insurance policy to which it is attached otherwise provides no coverage to the insured, for instance because the vehicle involved in the accident was not listed in the policy.  *See, generally, Canal Ins. Co. v. Distribution Services, Inc.*, 320 F3d 488, 489-90 (4th Cir. 2003).  One key feature of the MSC-90 endorsement is that if the insurance carrier is required to pay a claim thereunder, it then has a claim for reimbursement against the insured.  Hence Lancer's contingent claim against Guru in the present case.

Lancer's final argument is that a continued stay of the appeal also thwarts the Pennsylvania policy that cases be "decided on the merits." The Court is unclear on the exact policy to which Lancer refers, and how it may be implicated by a continued stay of the Appeal. The two federal cases cited by Lancer in its *Appeal Motion* on the point deal with the preference for cases to be decided on the merits rather than by default judgments. They are inapplicable here because the  state court judgment against Guru was the result of a jury verdict, not a default judgment. The lone Pennsylvania case cited by Lancer is a criminal case from 1839 in which the court cited a policy "to sustain all fair trials on merits" in upholding the result of a jury trial as against an argument by the defendant that by "standing mute" prior to the trial, rather than pleading, he had preserved the right to raise errors concerning the jury panel. Based on that case,  the Court fails to see how a continued stay of the Appeal in the present case violates any policy of Pennsylvania law.

Aside from the weakness of the Lancer arguments, there are two other reasons why the Court will not order the Trustee to proceed with the Appeal. The first is a general reluctance of the Court to involve itself in the Trustee's discretionary decisions. As was stated above,  the Court will typically defer to the business judgment of a trustee when it is made in good faith, with a reasonable basis, and within her authority. Those conditions are easily met here and the Court sees no reason to depart from its normal practice in that regard. Second, and perhaps even more importantly, by previously entering into the *Stipulation* the Court finds that, by its clear language, Lancer has conceded that the decision whether to continue with a stay of the Appeal is within the sole purview of the Trustee.

3.    The Motion to Dismiss [the Appeal] is hereby amended to provide that the Trustee shall agree to stay the Appeal *until further application by the Trustee at a later time*.

*Stipulation* dated June 29, 2015, at Doc. No. 89. *(emphasis added)*    Lancer resists that characterization of the *Stipulation*, but it is difficult for the Court to see the *Stipulation* as anything but a *quid pro quo* in connection with the *Trustee's Motion to Dismiss* whereby the Trustee agreed to stay the Appeal rather than dismiss it and in exchange Lancer withdrew its objection.    To now order the Trustee to proceed with the Appeal against her will, at least in the absence of a material change of circumstances – which has not been demonstrated here – would be to trample the intent of the *Stipulation* without justification.

### Stay Motion

The *Stay Motion* seeks an order that would authorize Lancer to pursue an action it started pre-petition in the District Court ("the Lancer Action").[6]    This is the second time that Lancer has sought relief from stay with respect to the *Lancer Action*.  On July 18, 2015, Lancer filed a *Motion for Relief from Automatic Stay* at Doc. No. 99 which asserted that good cause existed to grant Lancer relief from the stay so that it could pursue the *Lancer Action*.  On September 28, 2015,

---

[6]    The *Lancer Action,* styled *Lancer Insurance Company v. Guru Global Logistic, LLC, et al.*, was filed on June 5, 2013 in the Western District at No. 2:13-cv-00769-CB and assigned to District Court Judge Cathy Bissoon.  The complaint seeks a declaratory judgment as to the coverage owed by Lancer to Guru under the insurance policy (Count I) and under the MCS-90 endorsement (Count II).  The case was stayed and administratively closed on September 8, 2014, by Judge Bissoon, over the objection of Lancer, pending resolution of the McConnells' then-intended acquisition of an assignment of Guru's bad faith claim and *before* the within bankruptcy was even filed.  Thus, even if this Court were to grant relief from the automatic bankruptcy stay, Lancer would still need to seek relief from the District Court's stay order before the case could actually resume.

an Order was issued denying that motion.  *See*, Doc. No. 139.  The Court found at that time that

Lancer  had failed to make a prima facie showing of cause sufficient to grant relief, but noted that

the overall situation was rather fluid (as of that time the *Trustee Action* had been filed in state court,

then removed to federal court by Lancer, and was there the subject of a pending motion to remand),

and so made the denial "without prejudice to allow it to be refiled if the circumstances should

change."

The only significant change of circumstances that Lancer points to as having

occurred  since the first stay motion was denied is that the District Court, acting through Judge

Cathy Bissoon, has now remanded the *Trustee Action* to state court based on  lack of jurisdiction.[7]

 Lancer believes the remand to be of such significance as to warrant a revisitation of the stay issue

because it is now fairly certain that Lancer will  not get the benefit of a jury trial on the bad faith

claim in the *Trustee Action*, whereas previously when the first stay motion was decided that was

much less clear because the *Trustee Action* was then   residing in the District Court (if only

temporarily as it turns out) following Lancer's removal of the case.[8]   The question left open in the

order denying the first stay motion, *i.e.*, whether a denial of a jury trial is a significant enough factor

[7]        Because the remand of the *Trustee Action*  is the only change in circumstance since
the September 28, 2015 Order was issued that Lancer relies on, it is the focus of this Order.  The
September 28, 2015 Order is incorporated herein by reference, including Footnote 5 which notes that
the Court has not fully set forth the basis of its reasoning for denying relief from stay (referring to
the factors to be considered in a "balance of harm" inquiry, as outlined by the Court in *In re Chatkin*,
465 B.R. 54 (Bankr. W.D. Pa. 2012)), reserving the right to expand on that reasoning in the event
of an appeal.

[8]        The Parties  agree that Pennsylvania state courts do not afford jury trials in insurance
bad faith cases, whereas the 3d Circuit has held that there is a 7th Amendment right to a jury trial in
such cases.  *See, Klinger v. State Farm Mut. Auto Ins. Co.*, 115 F.3d 230 (3d Cir. 1997).

to tip the balance of harm in favor of Lancer and so grant relief from stay, must now be faced.

The cases addressing the issue of the relevance of the loss of a right to a jury trial for purposes of deciding whether to grant relief from stay seem to be in agreement that, while it is a factor worthy of consideration, it is by no means conclusive. *See, e.g.*, *In re Chan*, 355 B.R. 494, 501 (Bankr. E.D. Pa. 2006) (court stating that it did not perceive the potential loss of jury trial rights to be sufficient a basis, standing alone, to override the Congressional policy embodied in *Section 523(c)*, nor that a litigant's loss of a right to a jury trial outweighed the benefit to the Debtor of a less costly bench trial in the bankruptcy court); *In re Vivax Medical Corp.*, 242 B.R. 211, 215 (Bankr. D. Conn. 1999) ( while loss of right to a jury trial was a "harm" to be considered in deciding whether to grant relief from stay, it was outweighed by the need for prompt resolution); *In re Marvin Johnson's Auto Service, Inc.*, 192 B.R. 1008, 1019 (N.D. Ala. 1996) (a claimant's right to a jury trial should be accommodated if circumstances allow it to be done without substantial prejudice to estate administration).

The Court therefore views Lancer's loss of the possibility of a jury trial as a point weighing in favor of a grant of relief from stay. That additional weight, however, is a slight one because the grant of a relief from the automatic bankruptcy stay by this Court would not necessarily lead to a bad faith jury trial in the Lancer Action. More pointedly*, and as the Trustee's counsel aptly pointed out at the oral argument on the Stay Motion, many things would have to fall into place before that would happen, such that the Court views the chance that Lancer would ever actually get a jury trial on the bad faith claim as pretty remote. As a result, the Court finds that the balance still does not tip sufficiently in Lancer's direction to support a grant of the Stay Motion.

13

A closer look at what would need to happen for Lancer to get a jury trial even with a grant of the Stay Motion is instructive. Lancer would first have to successfully move the District Court to reopen the Lancer Action and lift the stay that was imposed by that court two years ago. That may be difficult to do since the presiding judge in that case, Judge Bissoon, not too long ago remanded the Trustee Action to Lawrence County and is thus well aware that the very same issues that would be addressed in the Lancer Action (and more beside) are already being addressed in the Trustee Action.  Judge Bissoon would also know that the Trustee Action is farther along procedurally, and that the state court judge presiding in that case, Judge Dominick Motto, is already intimately familiar with the relevant factual background, whereas Jude Bissoon would be starting from scratch, or nearly so. Under these circumstances, it would not be surprising at all if Judge Bissoon were to decide to defer to the state court by refusing once again to lift the stay or by abstaining.

Even assuming Lancer managed to get the Lancer Action reopened and the stay lifted, there are further hurdles to overcome before a bad faith jury trial would ever occur.  There is currently not even a bad faith claim pleaded in the Lancer Action.  Presumably, Lancer anticipates that a bad faith claim would be brought into the case as a counterclaim by Guru pursuant to the compulsory counterclaim requirement found in the *Federal Rules*.  *See, Fed.R.Civ.P. 13(a)*. That scenario, however, is complicated by the fact that Guru is now in bankruptcy and no longer controls the bad faith claim, which is an asset of the estate and under the control of the Trustee, who is already pursuing the bad faith claim in the Trustee Action.  Does the compulsory counterclaim rule apply in these circumstances? Could the Trustee be prejudiced by Guru's failure to plead a bad faith

14

counterclaim? Would the Trustee need to be joined as a party to the Lancer Action, or substituted for Guru as the real party in interest? These are complex questions which the Court will not even attempt to answer here – they are raised merely to show the many procedural pitfalls that possibly lurk on the pathway to a bad faith claim becoming a part of the Lancer Action.

If a bad faith claim is raised in the Lancer Action, the next question is whether it will be tried to a jury. That is also far from clear. The Trustee Action may have been completed by the time of trial in the *Lancer Action*, mooting any consideration of the same claim in that case. It is also possible that Lancer's right to demand a jury trial could be challenged. As previously noted, Lancer has filed a proof of claim in the Guru bankruptcy related to its contingent claim for reimbursement should it have to make a payment to the McConnells pursuant to the MCS-90 endorsement.[9] That could impact its ability to demand a jury. *See, Langenkamp v. Culp*, 498 U.S. 42 (1990) (creditors who file proofs of claim against the estate are not entitled to a jury trial on matters affecting the allowance of those claims). The general principle of a waiver of the right to a jury trial based on a voluntary submission to a bankruptcy court can have far-reaching and perhaps surprising results. For instance, in *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242 (3d Cir. 1994), the court found there was no right to a jury trial on a common law legal malpractice claim brought by debtors against their bankruptcy attorneys that was found to be part of the claim allowance process. Might a bad faith claim raised as a counterclaim in coverage litigation by which Lancer's contingent claim would be determined be considered a part of the claim allowance

---

[9]       As also noted previously, there is a pending objection to the proof of claim, but as of now that has not been ruled on and the proof of claim remains.

process?  Again, the Court here is not attempting to reach any conclusion or even comment on whether Lancer has waived any jury trial rights by filing its proof of claim.  It is merely pointing out that there are possible issues involved in that matter.

The Court thus finds that the possible loss of the chance of having a jury trial on a bad faith claim is not a sufficient change of circumstance to warrant a change in the Court's previous decision to deny relief from stay regarding the Lancer Action.  The possibility that a jury trial on bad faith would actually occur in the Lancer Action were the Court to grant relief from stay seems slight and does not outweigh the factors that support a continued imposition of the stay – the most prominent of which is that the Trustee Action provides a more than adequate alternative forum to address all matters that have been or could be raised in the Lancer Action.

One final point to be addressed  is the "first filed rule," which Lancer invokes in support of the Stay Motion.  Essentially, Lancer argues that because the Lancer Action  was filed prior to the Trustee Action, it should be considered the "favored forum" unless fairness or efficiency considerations require otherwise.  The Third Circuit has stated the first filed rule as follows:  "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject matter must decide it." *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) (quoting *Crosley Corp. v. Hazeltine Corp*., 122 F.2d 925 (3d Cir. 1941).  Since the Trustee Action is in state court, it can readily be seen that  the first filed rule has no application here.  *See, e.g., Nihon Tsushin Kabushiki Kaisha v. Davidson*, 595 F.Supp. 2d 363 (D. Del. 2009) (first-filed doctrine does not apply when similar actions are pending concurrently in federal and state court), *In re Tarragon Corp*., 2009 WL 2244598 (Bankr. D. N.J. 2009) (same).  The Court therefore sees no reason why,

for prudential reasons, the Trustee Action should not be permitted to proceed while the Lancer

Action is stayed, even though the latter was filed first.[10]

*AND NOW*, this **15th** day of **September, 2016**, for the reasons stated above, it is

***ORDERED, ADJUDGED*** and ***DECREED*** that,

(1)    The ***Motion for Order Directing the Trustee to Abandon, or in the Alternative Proceed with, Pre-Petition Appeal*** is ***DENIED***.

(2)    The ***Motion for Relief from Automatic Stay*** is ***DENIED***.

Thomas P. Agresti, Judge
United States Bankruptcy Court

Case Administrator to serve:
    Michael Kruszewski, Esq.
    Tamera Ochs Rothschild, Esq.
    David Graban, Esq.
    Ronald Roteman, Esq.
    Jeffery Killino, Esq.

---

[10]    In the September 28, 2015, Order denying Lancer's first motion for relief from stay the Court noted that the first-filed status of the *Lancer Action* was a relevant factor weighing in favor of Lancer in the overall balance of harm inquiry, and it reiterates that view here.  However, it is <u>only</u> that – a factor – and a fairly slight one at that.